IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 4:22-cr-12-002 |
| | ) | |
| DESTINY NA'IYMAH DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

GOVERNMENT'S TRIAL MEMORANDUM

The United Sates, by and through undersigned counsel, submits this trial memorandum for the Court's review. The memorandum includes a summary of the facts, the status of the case, the essential elements of the crime, the witnesses and exhibits, and potential issues that may arise at trial.

**I.  Summary of the Facts**

In early 2021, Khalil Rashad Armstrong, a violent member of, and a self-proclaimed "enforcer" for, the undocumented "Play Lay" gang local to Hampton Roads, Virginia, desired a firearm. Armstrong was under the age of 21 years at the time and could not legally purchase a firearm. By his own bragging admissions, Armstrong was also a heavy, daily, marijuana user. Davis, his cousin who interacted with Armstrong regularly, had reasonable cause to believe Armstrong was an unlawful user of marijuana, a controlled substance as defined in 21 U.S.C. § 802. Armstrong convinced Davis to purchase a firearm for him.

On or about February 21, 2021, using money given to her by Armstrong, Davis entered Wilcox Bait & Tackle Inc., a licensed dealer of firearms ("FFL") in Newport News, Virginia, and

1

purchased a Taurus, Model G3, 9mm, semiautomatic handgun for Armstrong. To purchase the firearm, Davis was required to fill out, attest to, and execute a Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives Form 4473, Firearms Transaction Record. FFLs are required to keep and maintain properly executed Form 4473s in their records for every firearms purchase. Davis knowingly made false and fictitious written statements and representations to Wilcox Bait & Tackle Inc. as to material facts regarding the lawfulness of the sale and caused such false information to be kept in the records of an FFL in violation of federal law.

Davis led Wilcox Bait & Tackle Inc. to believe it was lawfully selling a firearm to Davis. But Davis was a straw purchaser for Armstrong. Not only was Davis not the actual purchaser – a violation itself regardless of the status of the actual purchaser – but the actual purchaser, Armstrong, was a prohibited person for two reasons, i) he was under the age of 21-years-old; and ii) he was an unlawful user of a controlled substance.

Based on National Integrated Ballistic Information Network ("NIBIN") data, the Taurus 9mm Davis purchased for Armstrong on February 21, 2021, was used in a shooting later that same evening. There were no victims. The same firearm was used in a second shooting on May 2, 2021. Again, there were no victims, but the shooting resulted in property damage.

## II.   Status of the Case

Both Armstrong and Davis were indicted on February 14, 2022. ECF No. 1. Davis appeared for her initial appearance on March 1, 2022, and released on bond. Arraigned on March 3, 2022, Davis pleaded not guilty. At a status conference before this Honorable Court via Zoom, Davis' trial date was set for May 16, 2022.

Armstrong remains in state custody on unrelated charges and will be transported to federal custody for his initial appearance in this case pending resolution in the state for his current disposition.

### III. Essential Elements of the Crime

Davis is charged in three counts:

### a. Count One

*Make a False Statement During Purchase of Firearm
in violation of 18 U.S.C. §§ 922(a)(6); 924(a)(2); and 2*

**§ 922(a)(6) – The essential elements required to prove this violation are:**

- The defendant acquired or attempted to acquire a firearm from a federally-licensed firearms dealer;

- In so doing, the defendant knowingly made a false or fictitious statement, orally or in writing, or knowingly furnished or exhibited a false or fictitious identification intended or likely to deceive such dealer; and

- The subject of a false statement or identification was material to the lawfulness of the sale.

*United States v. Rahman*, 83 F.3d 89, 92 (4th Cir. 1996).

In the *United States v. Abramski*, 706 F.3d 307, 316–17 (4th Cir. 2013), *aff'd*, 573 U.S. 169, 134 S.Ct. 2259, 189 L.Ed.2d 262 (2014), the Supreme Court held that straw purchasers can be prosecuted for the misrepresentation under § 922(a)(6) "whether or not the true buyer could have purchased the gun without the straw." *Abramski*, 573 U.S. 172. It further held that § 924(a)(1)(A) "is broader than § 922(a)(6) in one respect: It does not require that the false statement at issue be "material" in any way. At the same time, § 924(a)(1)(A) includes an element absent from § 922(a)(6): The false statement must relate to information required by this chapter to

be kept in [a dealer's] records." *Abramski*, 573 U.S. 191 (internal quotations omitted); *see also* Federal Firearms Manual § 1.10.

Moreover, the Eleventh Circuit has held that materiality is *not* a question for the jury. See the discussion in *Federal Firearms Manual* § 1.7. In some straw purchase situations, the licensed dealer is a knowing participant in the unlawful sham transaction. Because it may be difficult to prove that the buyer's false statements were "intended or likely to deceive" the dealer, prosecutors should consider charging buyers in such situations under 18 U.S.C. § 924(a)(1)(A).

§ 924(a)(2) – Penalty Provision applied to § 922(a)(6) violations

§ 2 – Aiding and Abetting here applies to Armstrong

b. **Count Two**

*Sell or Dispose of Firearm to an Unlawful User of Controlled Substance in violation of 18 U.S.C. §§ 922(d)(3) and 924(a)(2)*

**§ 922(d)(3) – The essential elements required to prove this violation are:**

- The defendant knowingly sold or otherwise disposed of a firearm to;

- Another person, who at that time, was an unlawful user of a controlled substance as defined in 21, U.S.C. § 802; and

- The defendant, at the time of the sale or disposition, knew or had reasonable cause to believe, that the other person was an unlawful user of a controlled substance as defined in 21, U.S.C. § 802.

To "dispose" of, with regard to firearms, historically is a broad term of art. "The term apparently had its origin in § 1(k) of the National Firearms Act, Pub.L. 474, 48 Stat. 1236 (1934). That Act set certain conditions on the 'transfer' of machine guns and other dangerous weapons. As defined by the Act, 'transfer' meant 'to sell, assign, pledge, lease, loan, give away, or otherwise

4

dispose of.' The term 'otherwise dispose of' in that context was aimed at providing maximum coverage. The interpretation we adopt here accomplishes the same objective." *Huddleston v. United States*, 415 U.S. 814, 826–27, 94 S. Ct. 1262, 1270 (1974); cited favorably in *Abramski*, 573 U.S. 172. In both the Seventh and Eighth Circuits constructive possession is sufficient to constitute a "disposed of" firearm: "The Seventh Circuit then approved this definition of 'dispose of': 'to transfer a firearm so that the transferee acquires possession of the firearm.' [*United States v. Jefferson,* 334 F.3d 670,] 675 [(7th Cir.2003)]. Under either definition, a recipient's possession is sufficient proof that a defendant disposed of a firearm. Constructive possession is 'control over the place where the firearm was located, or control, ownership, or dominion of the firearm itself.'" *United States v. Stegmeier*, 701 F.3d 574, 579–80 (8th Cir. 2012), (citing *United States v. Perez,* 663 F.3d 387, 391 (8th Cir.2011)), (quoting *United States v. Cox,* 627 F.3d 1083, 1085 (8th Cir.2010)). Though unpublished, the Fourth Circuit has agreed: "Courts interpreting 18 U.S.C. § 922(d)(1) have held that 'a disposal occurs when a person 'comes into possession, control, or power of disposal of a firearm.''" *United States v. Pierre*, 71 F. App'x 187, 191 (4th Cir. 2003), (quoting *United States v. Monteleone,* 77 F.3d 1086, 1092 (8th Cir.1996)), (quoting *Huddleston,* 415 U.S. 823).

Additionally, just as *Abramski* addressed how § 924(a)(1)(A) and § 922(a)(6) reasonably are co-prosecuted, so too does it address the often coexistence of § 922(a)(6) and § 922(d) violations:

> Abramski claims further support for his argument from Congress's decision in 1986 to amend § 922(d) to prohibit a private party (and not just, as originally enacted, a licensed dealer) from selling a gun to someone he knows or reasonably should know cannot legally possess one. See Firearm Owners' Protection Act, § 102(5)(A), 100 Stat. 451–452. According to Abramski, the revised § 922(d)

should be understood as Congress's exclusive response to the potential dangers arising from straw purchases. See Brief for Petitioner 26–27. The amendment shows, he claims, that "Congress chose to address this perceived problem in a way other than" by imposing liability under § 922(a)(6) on a straw who tells a licensed dealer that he is the firearm's actual buyer.

But Congress's amendment of § 922(d) says nothing about § 922(a)(6)'s application to straw purchasers. In enacting that amendment, Congress left § 922(a)(6) just as it was, undercutting any suggestion that Congress somehow intended to contract that provision's reach. The amendment instead performed a different function: Rather than ensuring that a licensed dealer receives truthful information, it extended a minimal form of regulation to the *secondary* market. The revised § 922(d) prevents a private person from knowingly selling a gun to an ineligible owner no matter when or how he acquired the weapon: It thus applies not just to a straw purchaser, but to an individual who bought a gun for himself and later decided to resell it. At the same time, § 922(d) has nothing to say about a raft of cases § 922(a)(6) covers, including all the (many) straw purchases in which the frontman does not know that the actual buyer is ineligible. Thus, § 922(d) could not serve as an effective substitute for § 922(a)(6). And the mere potential for some transactions to run afoul of both prohibitions gives no cause to read § 922(d) as limiting § 922(a)(6) (or vice versa).

Abramski's principal attack on his § 922(a)(6) conviction therefore fails. Contrary to his contention, the information Question 11.a. requests—"[a]re you the actual transferee/buyer[?]" or, put conversely, "are [you] acquiring the firearm(s) on behalf of another person[?]"—is relevant to the lawfulness of a gun sale. That is because, for all the reasons we have given, the firearms law contemplates that the dealer will check not the fictitious purchaser's but instead the true purchaser's identity and eligibility for gun ownership. By concealing that Alvarez was the actual buyer, Abramski prevented the dealer from transacting with Alvarez face-to-face, see § 922(c), recording his name, age, and residence, see § 922(b)(5), inspecting his photo ID, see § 922(t)(1)(C), submitting his identifying information to the background check system, see § 922(t)(1)(B), and determining whether he was prohibited from receiving a firearm, see § 922(d). In sum, Abramski thwarted application of essentially all of the firearms law's requirements. We can hardly think of a misrepresentation any more material to a sale's legality.

*Abramski*, 573 U.S. 187–89 (citing *United States v. Batchelder,* 442 U.S. 114, 118–126, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979).

### § 924(a)(2) – Penalty Provision applied to § 922(g)(3) violations

**c. Count Four** (Davis is not charged in Count Three)

*Make a False Statement with Respect to Information Required to be Kept by a Licensed Firearms Dealer in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2*

### § 924(a)(1)(A) – The essential elements required to prove this violation are:

- The dealer was a federally licensed firearms dealer at the time the offense occurred;

- The defendant made a false statement or representation in a record that the licensed firearm dealer was required by federal law to maintain; and

- The defendant made the false statement with knowledge of its falsity.

*United States v. Rodriguez-Soriano*, 931 F.3d 281, 287 (4th Cir. 2019) (citing *Abramski*, 573 U.S. 169).

### § 2 – Aiding and Abetting here applies to Armstrong

### IV. Witnesses and Exhibits

The United States is still in the process of finalizing its lists of witnesses and exhibits for this trial. In accordance with the Court's order, the government will provide the defendant with its final exhibit list no later than May 11, 2022, and its final witness list no later than May 12, 2022. ECF No. 16.

At present, the government intends to call the following witnesses in its case and chief:

- Employees/custodians of record for Wilcox Bait & Tackle, Inc.

7

- Members of the investigative team

The government expressly reserves the right to modify this witness list in the coming weeks as it further prepares for trial.

At present, the government has identified the following as representative selection of its primary exhibits:

- Documentation regarding the subject firearm
- Analysis of documents
- Statements against interest
- Phone messages
- Photographs

### V.   Potential Legal Issues

The only potential legal issues foreseeable at this time are complications that may arise from Davis' unavailable co-defendant.

## VI. Conclusion

The government respectfully submits this trial memorandum for the Court's consideration prior to trial.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____
Peter Osyf
Assistant United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
Peter.Osyf@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that, on May 2, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

                                                     /s/
Peter G. Osyf
Assistant United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
Peter.Osyf@usdoj.gov